Case No. 15-238, United States of America v. Ronald Bruce Myers, Arguments not to exceed 15 minutes per side. Mr. Tableman for the appellant. Mr. Myers. There's a great deal to this case which has tried before a jury. I thought I'd start with the issue of multiplicity counts 1 through 4. I think this is a drafting issue. If you look at the indictment, count 1 charges a very sprawling conspiracy to do all sorts of things related to the theft of motor homes. It was a pretty sprawling conspiracy in fact wasn't it? Yes it was. Mr. Myers is a career motor home thief. There's no question about that. And I'm sure the government had a strong desire to apprehend him and punish him appropriately. But having said that, he certainly is still entitled to the same protections as anyone else and the same rules that apply to anyone else. And one of those rules is that you can't take one crime and split it into four. That's what happened on counts 1 through 4. So you're talking about the counts that say conspiracy to steal various RVs and conspiracy to commit money laundering? No, Your Honor. Okay. Let me back up. It's a sprawling case. It's a very hard case to grasp. Although once you dig your way through it, it actually collapses into a very simple case. That's my position. So count 1 charges a big conspiracy to steal these motor homes, change the title, use forged false titles, sell the motor homes to dealers, wire money to bank accounts, not reporting this on income tax. That's count 1. And venue on count 1 is fine because three of the overt acts are motor homes that are stolen in the state of Michigan in the western districts. There's no problem with venue on count 1. Counts 2, 3, and 4 are put forward purportedly as substantive counts of just stealing a motor home. But as Mr. Myers said at the trial and as we say in our brief, if you examine the indictment, the indictment says he did this, he did this, he did this, and he conspired to do this with relation to each of those motor homes, which are also overt acts as to count 1. And the argument is if you're conspiring to a big scheme to steal all these motor homes and an overt act is stealing a motor home and you're conspiring to steal that motor home, that's not two conspiracies, that's one conspiracy. You have a conspiracy to do all this stuff, an overt act is stealing a motor home, and yes, you could charge simply a charge of stealing a motor home, but that's not what was charged. That's not what was presented to the grand jury and that's not what was tried. The overall conspiracy count that is directed toward stealing of motor homes and transporting them in interstate commerce, is that right? Yes, Your Honor. And then certain acts of doing that, certain behavior, conduct of doing that is charged as an overt act? Yes. Well, that's the normal way to draft an indictment. I have no problem with count 1. My problem is counts 2, 3, and 4, which are supposed to be counts, just substantive count of on such and such a day you stole a motor home, but the language in there is on such and such a day you conspired to steal a motor home. And that's my argument as to counts 1 through 4, is that you took, you charged your one big conspiracy charge and you charged your hundreds of overt acts. Among the overt acts were stealing these three motor homes in the western district of Michigan. So far, so good. But why isn't that multiplicity when you say, all right, now count 2, on such and such a day you conspired to steal this motor home, listed as an overt act, and count 1? But, I mean, counts 2 through 4 also say that he, in fact, transported these things or aided and abetted the transportation of, you know, particular motor homes with a particular VIN number. I mean, it also says conspired. Right. But if it said only conspired, I could see your point. But it says, you know, he actually transported. So why isn't that beyond, or why isn't that just sort of what Judge Merritt said, you know, sort of par for the course? Here's a conspiracy charge. Here's the charge where he actually did it. And I would agree with you except why are we seeing conspiracy in counts 2, 3, and 4? I don't want to put it in there, but how does it mislead anybody or do anything that is a problem? Well, I don't know about proper or improper. A jury is told, here's a conspiracy, and then they're told on count 2, here's a conspiracy. How do we know how they decided the case? Were the instructions separate from the same problem? I don't recall what the instruction says, 2, 3, and 4, but the verdict form certainly said conspiracy as well on counts 2, 3, and 4. And Mr. Myers insisted it say that. And so I think it's a fair inference to say that it was all one thing. Well, Mr. Myers insisted that the verdict form? Yeah. Well, I mean, wouldn't he then actually have waived any complaint about the potentially confusing effect of that language in the verdict form? I think for a person to say, you charged me in an indictment, and the indictment says A, B, and C, I want the verdict form to say A, B, and C. It does not waive anything. He's protecting his right to be tried by a jury on what's what. I don't think there's anything wrong with that or a waiver, and I would argue that's not a waiver. So to back up a little bit, you say it's sloppy. I say it's prejudicial to my client, and the cops should be. Al, what is the prejudice? Well, penalty is a prejudice. It's the classic prejudice of multiplicity. You're punished multiple times for the same thing. That's pretty prejudicial to me. Substantive counts are normally, I mean, this is the way indictments have been drafted for centuries, with a conspiracy count and substantive counts, and they just happen to put the word conspiracy in the substantive count, and my question is, what is harmful about that? Conspiracy. Charge of conspiracy. Substantive count. Charge of substantive count. Conspiracy. Conspiracy. It's a word. We're lawyers. That's our tool in trade. Judges are judges. Lawyers are lawyers. We assume juries follow directions. That's the harm, and you're talking about 10, 20, 30 years of a man's life, I would say. But it was overwhelming. He, in fact, stole these things. No question. So, I mean, is this multiplicity thing, is that just, I forget, is it subject to harmless error analysis? Because if it is, you've got a pretty strong case against your client here. Well, no, I think there's harm. Is it subject to harmless error analysis? I don't believe so, where a person gets more time in prison as a result of the error. No. How could that be harmless? We have lots of issues in this case. Right, there are. So let me spend another, let me turn to another issue. There's an argument that venue was, well, I want to argue that the venue was improper on Counts 6 and 7, which are the substantive money laundering counts. And the argument is that none of this money movement involved in the proceeds of the sale of the stolen motorhomes occurred in the western district of Michigan. Does this, do I understand from what you just said that this argument only applies to the substantive? Yes, yes. So the conspiracy to money launder, it doesn't apply to, is that right? I'm just making this argument as to Counts 6 and 7. Well, I don't know by number. Okay, well, all right, so we have three money laundering counts. One is a conspiracy to money launder. Then we have Counts 6 and 7, which are substantive money laundering counts on such a date. So this wouldn't affect your client's sentence other than maybe the $100 fee or if he gets acquitted some other day on something else? I guess those probably two wouldn't. Yes, Your Honor, I don't think it would. Just out of curiosity, why aren't you making it as to the conspiracy to money launder count? Well, I wanted to start there and work back. Okay, yeah, you go whichever way you want. I'm curious about that. But I see I've run out of time, so perhaps I should, I saved six minutes for him. I guess I could. No, yeah, if you want to take that up. Well, I mean, the issue about proceeds is, I mean, in the money laundering statute you have these definitional phrases. And I think, you know, what is the meaning of the word proceeds? You have a definition that says a proceed is any property that comes from one place to the other. But it's a money laundering statute, and all the money involved in this case is charged in. . . The definition of proceeds excludes any kind of property other than money? Is that what you're trying to say? Yes. Well, that's the gist of the argument. Because it just doesn't. . . But if they stole money, if, for instance, it was a theft of money from a bank, and then they took the money out of the state, that would be proceeds? And they took the money out of the state, they put it in a suitcase, took it out of the state, and then they did all kinds of transactions to hide it. I think I want to make a distinction between the theft of tangible articles, even though those are admittedly property, and then the conversion of those. . . Do you think even taking dollar bills out of it, is that dollar bills are tangible in this distinction or not? Well, no, I mean, I think. . . Other tangible stuff. Other tangible stuff. Other tangible stuff. Other stuff other than money. So my question still obtains, then. So in my hypothetical, you steal a pile of money, cash, $100 bills. You have a suitcase full of $100 bills. You need to process it. So the first thing you do is you take it out of the state. And then you never go back or have any other further connections with the state. You just stole it, let's say, or sold drugs for it, or whatever you did. Now, you can prosecute them for the way that they obtained the money, the dollar bills. But you're saying they can't prosecute them in that state, if there's been a proper objection, in the state that they took it to. Or, no, it's the other way around. You can prosecute them for the money laundering in the state that they took it to. But you can't prosecute it for the state that they took it out of. And you would say that even for the dollar bills. Which seems a little strange. Well, there's transportation money laundering. Driving with money is certainly part of that offense. There's that Queller case. Right. I mean, there's different kinds of money laundering. So that's the problem in thinking about all this. I understand, but apart from the nature of it, maybe I don't understand money laundering law. I mean, I'm sure I don't. But it seems like an artificial distinction to say you take valuable diamonds out of the state and then fence them. Or you take dollar bills out of the state and then convert them into diamonds, or whatever it is. That those should be treated differently for venue purposes. That seems anomalous, is what I'm asking. But that's what you're arguing. It is what you're arguing. That is what I'm arguing. You see why that sounds a little anomalous. Yeah, I do understand that. I think part of the problem of this is that if you take really a broader definition, you say, well, the motor home itself is property, then that counts. That gives you venue. Then I think it's hard to distinguish between the substantive offense and the money laundering offense. And we have good law that says that the circumstances of the money laundering, that's the Cabrera case, the circumstance is not an element of the offense, and that's the theft. Thank you for allowing me. That was a lot of arguments. Do you want to hear some? I'm happy to hear from the government. Okay, thank you. Thank you for asking. May it please the Court, Jennifer McManus for the United States. I think I'll start where we left off with venue on the money laundering counts. Venue was proper in West Michigan. In this case, on the money laundering counts, both the conspiracy to commit money laundering and the substantive concealment money laundering offenses because the defendant, Ron Myers, laundered proceeds that included property that he stole from West Michigan and quite literally transported out of the district. You're saying the RV, I mean, there was a very late 28-J filing about a statute that's been here all along. Mr. Tableman should have had a chance to respond to this in his reply brief. It would have been helpful to us to. Absolutely. Everybody's scrambling now. Absolutely. It was not the best way to present this argument by a long shot, and it should have been in the briefs for sure. So I think what happens, and it's not an excuse, but sometimes what happens is you look at a case in a certain way and it's briefed that way in the district court, and I think you sometimes have a different perspective when you start getting ready for oral argument. So we certainly made the sort of general argument that. The government's argument on this point in the red brief is remarkably perfunctory, if you ask me. It certainly is. Remarkably. But I'd sense, well, anyway, I'm not really, it's not a criticism of you personally by any means. Well, sort of. And I apologize that the brief is perfunctory. On this specific point, it just sort of elides the issue itself and just wants to pretend it's not really there. But anyway, I don't mean to sort of just analyze the government's brief here. What happened with the substantive counts, including the idea of conspiracy in the substantive counts? Is that another just problem? Yeah, well, to turn to that for a second. The language conspired to transport is included in the indictment on the substantive counts, which is unusual. Usually you charge just the conspiracy and you charge the substantive offenses. If you look at the indictment, it says, when it lists the statutory provision, Section 371, in parentheses, Pinkerton. So the purpose, as I understand it, I didn't draft the indictment, but as I understand it, the purpose of including that was to alert the district court and the defendant that it was possible, at the outset of the case, that the government might pursue a Pinkerton theory of liability. So Pinkerton liability, of course, arises from the case Pinkerton, where a conspirator can be held liable for the substantive offenses of his or her co-conspirators. So that was a theory of liability that ultimately was not pursued. So because the government had adequately proven that the defendant, in fact, transported the motor vehicles across state lines, that was a theory that was presented at trial and proven, and that was what the jury was instructed on. The jury actually wasn't instructed on any language about conspiring to transport with respect to the substantive offenses. So, like, I'm looking at Count 2, which is very short. It just says, this is the second sentence, first time the word comes up. It says, Myers transported, conspired to transport, and aided and abetted. So the way indictments are constructed, if you want to prove one or the other, you have to use it in the conjunctive in the indictment is how it works. That's correct, Judge Rogers. We plead in the conjunctive and we prove in the disjunctive. So this was an alternative. That appears to be the way it's always done, which suggests that, if that's accurate, it suggests that this just, in this substantive count, conspire is just one of three ways in which earthed, I don't know, three elements of, are those correspond to the three sections underneath that are cited, 2312, 2, and 371? That's correct. They're slightly out of order. So 2312 is the actual transporting, Section 2 is aiding and abetting, and Section 371 would be conspiracy. I see. And those were theories of liability for the substantive crimes. And, again, the jury is. . . If it's proved and instructed as to only one of those, then you're saying there's no multiplicity. Is that the idea? Correct. Because it was actually, the instructions included only the actual transporting.  And the jury found that all three were proven, so there is no harmful error here. Well, getting back to the venue. . . Yes. Notwithstanding the breadth of the definition of proceeds here, the indictment itself says that the. . . Let me just back up. Would you agree that Cabrales says that the anterior criminal conduct that gives rise to the proceeds, in that case drug dealing, in this case stealing the RV, is not part of the money laundering offense itself? Yes. Okay. I appreciate that. And so now we have to look at the money laundering offense itself to determine if any part of that offense took place in the state and district in which he was tried. Yes. I mean, the Constitution has two provisions on this, so it's pretty serious. It's not just, oh, it's more convenient. Now, in the two counts that Mr. Tableman is challenging the venue for, the particular acts that are alleged to have constituted concealment money laundering are not driving an RV. They are two particular financial transactions with banks. Two transactions in count six, one transaction, I guess, in count seven, both with this Wood Forest National Bank, which I gather is not in Michigan since I've never heard of it. So the two acts that are alleged to be the offense of concealment money laundering here, neither of them happened in Michigan. So why isn't it true that as alleged and, I guess, proven here, these offenses, notwithstanding the breadth of money laundering, whatever, proceeds, these offenses were not in Michigan? Nothing happened in Michigan as to these two offenses? Because the laundered proceeds, the property, was directly traceable to the property that was taken out of West Michigan. And there are two reasons. One is the statute, which we should have raised earlier, but we do rely on now. I guess, you know, but the government alleged that the offense in this case were several transactions, not driving an RV. The government chose not to allege that driving an RV across state lines was part of this offense, chose not to do that, maybe for good reason. Why shouldn't we take the government's characterization in the two counts here as definitive of the scope of these two particular crimes for purposes of the venue provisions? Because I think that would be an overly broad reading of Cabrales, and it would not respect the plain language of the venue provision because it doesn't limit. I'm talking about the constitutional provisions when I say the venue provisions. Right. Well, and so then maybe we get back to this sort of substantial context test, if we're going to talk about sort of the constitutional overlay on venue and whether there were substantial context. That's not what I'm thinking of. I guess, I mean, my immediate question is the government said the crime is transactions A, B, and C. Why shouldn't we take the government's characterization for purposes of determining where this crime happened? The government's quite specific. Why not just say, okay, where did those transactions happen? If they were in this district, you're okay. If not, there might be a problem. And then we'd go on to these other tests and so on. Well, because I think the test for venue constitutionally and under the statute is broader than that. Okay, let's talk about constitutionally. I mean, how is it broader? I think, and that's where I get back to the substantial context test, because there is that sort of test to determine whether it would be unfair to subject a defendant under the Constitution to prosecution in a district remote from the place where he committed the crime. So if he had never had any contact with West Michigan, had not entered the district, had not chosen to steal these motorhomes. Is that a Supreme Court test, or where did that test come from again? Well, the case that's generally considered the basis for the test is the United States v. Reed case in the Second Circuit. Well, Cabrales is a pretty close on-point precedent, isn't it? I mean, that's the U.S. Supreme Court dealing with, I believe, concealment money laundering, if I recall. Yes. Shouldn't we kind of look to that as opposed to what sounds like a pretty vague test out of the, sounds like personal jurisdiction and civil procedure or something? Right, well. Is Cabrales constitutional or statutory? It is constitutional. There was no venue statute at the time specific to money laundering. So let's talk about Cabrales for a second. Sure. Cabrales, we think, is actually consistent with our view of venue, how venue should be determined in this case even before the statute was enacted and certainly with the enactment of the venue statute for money laundering. And the distinctions that are relevant between our case and Cabrales are important, and that is that in Cabrales, of course, the defendant had not been charged in the indictment with participating in the drug dealing activity in Missouri and had not been charged or there was no allegation of having taken any property or any proceeds out of Missouri. So she had not availed herself. Well, the court does not do the so part. The court recites those two facts, and so far as I can tell in its actual analysis, does nothing. It just has nothing logically to do with the holding as the court explains it. Those two things are just there. That's correct, except that the court does say that in some cases money laundering could be a continuing offense, for example. When you get through with this answer, I have a question I want to ask too. Okay. I'll note that. I'll relent. Okay. Yeah, so we think that just to close it out, that the Sixth Circuit, when it decided errands, for example, did appropriately give some weight to those observations in Cabrales and that they are significant here. And, in fact, Congress, when it enacted the money laundering venue statute, pretty much adopted what our view of the appropriate reading of Cabrales is, which is that if the defendant availed himself of the venue by participating in the venue. Okay. I understand you. I think you've answered. I understand where you're coming from on Cabrales. Okay. Let me ask you this question. If you didn't have, in the proceeds definition, the word property, so that it reads along indicating with that if clause in the language, that the money laundering itself, the financial transaction, has to take place in the district. But where, if the word property were not in the definition, you'd have a hard way to go to establish what you're trying to establish here, right? It is more difficult to establish that venue is proper in West Michigan. The substantive money laundering counts. You can't just assume that contacts, you've got contacts, but you can't just assume without a statute that that's what Congress had in mind. I think Congress was a little confused because it only came along apparently and added the definition of proceeds that included property later on, I take it, because there was a problem in trying to enforce the statute. But I don't see how you would get where you want to go unless the word property were not in the definition of proceeds. It is definitely a harder argument to make without that definition. So the definition, we think, is significant and is important because money laundering does extend, and there are cases that discuss money laundering of non-fungible money property, so diamond rings that are stolen and taken across state lines, physical inventory that is stolen and taken across state lines can be the subject of money laundering. And so we think that the definition, which I think maybe was adopted in a different context, was nonetheless purposeful in choosing a broad definition of proceeds to include property. If a money laundering offense, in fact, is some financial transfer as opposed to taking an RV out of the district, wouldn't a venue statutory provision that says taking the RV out of the district, the district out of which you took the RV is an appropriate venue, wouldn't that just simply be unconstitutional as applied under the Sixth Amendment and the other venue provision in the Constitution? No, I don't think so because the general gist of the constitutional analysis is determine whether it's fundamentally unfair to subject the defendant to prosecution in a remote forum. But Cabrales sure didn't talk about fundamentally unfair. It's about elements and where did this happen. Is there a Supreme Court case that analyzes the constitutional venue provisions in terms of fundamentally unfair as opposed to terms of the elements of the crime and where they happened? Is there a Supreme Court case that says that? I think that that discussion is in, for example, Rodriguez-Moreno and maybe less so in Cabrales, but when courts typically, including the Supreme Court, talk about constitutional concerns with venue, they start with that notion, I know it's in there, about why we care. And why we care is we don't want somebody to be subjected to criminal prosecution in a forum far from where he chose to commit his crime. And I think that's the concern that Cabrales was getting at, right? Because money laundering can occur with all kinds of different specified unlawful activity going on. And a defendant could be subject, if it were otherwise, a defendant could be subject to prosecution in a very remote forum, having had nothing to do with the ancillary criminal conduct that led to the proceeds that he acquired and then tried to hide. But that's not what happened here. And I would say, you know, look at Rodriguez-Moreno in footnote four, which does actually. I did last night. Which I'm sure you did, which does have, you know, make this distinction with Cabrales, of course, but also notes there that there in Cabrales, the defendant was being held responsible, in essence, for the criminal conduct committed by others in a remote forum. And that's not what we have here, the court said in a sort of different context. And I do think that that distinction is significant because this defendant chose to enter West Michigan, chose to steal these motor homes and drive them across state lines. It's not unfair to subject him to prosecution here for those crimes. I have some questions on some of these other issues that I would like to ask, and just a result of having so many issues in this case. Yes. And one deals with the loss calculation with respect to the resale price, and the other deals with the sophisticated acts, and they each sort of deal with counting things twice, although it's probably not technically double counting, or maybe it is. If you talk up, if somebody steals something from you, as opposed to defrauds you of it, like they steal your prized dog or whatever, and then they sell it, and then they sell it again, and then somebody sells it, and it's sold ten times. Each one of those people has converted under conversion law that property, and you can sue any one of them. But my understanding under tort law is you can only recover the total amount of the value of the dog or the diamond or whatever it is. But it seems to be that the law that they're applying with respect to loss calculation is to permit the accumulation of that. So everybody who possesses at one point the stolen property suffers a loss even if they sell it. Right? Do you see what I'm saying? I do see what you're saying. And here it was only two, but it seems like if you get more than the value of the property that's stolen, it's a little bit counterintuitive to say that that's the amount of loss. And it would lead directly, logically, to saying if they sold it again, you could triple the value of it and say that was the amount of the loss. So what's the logic of saying that the loss can be multiplied in that fashion? I think the rationale is that here in this criminal sentencing context, the court has to take a snapshot of the loss at the time of sentencing. And so at the time of sentencing, the court looks to see what is the universe of the loss that it's appropriate to hold this defendant accountable for. So I don't think that there could be sort of an infinite amount of accumulating loss. But what is reasonable and appropriate is to hold... But it could be multiple under that theory. It could be... It could be three or four times. It could be multiple. Even if it's double, it seems strange to have it be double. But here it is significant that it was only the secondary purchasers because what the crime was... Maybe you can eliminate the parade of horribles and just look at doubling it. How does doubling it seem logical? Well, because these were real people who were out money. So they might have an intangible ability to recover from the motorhome dealers who sold them the vehicles. And maybe eventually they would be able to... When they sold it, they didn't get the money? Or they did get the money? In the snapshot theory, the money is either in the person they sold it to or the person they can't be. Both of them have lost it. One of them received compensation from the other one or he didn't. Right? I mean, I'm not following. So at the time of the sentencing, there is the snapshot includes the dealer, you know, who may not have been compensated from the insurance company. Or it's the insurance company. It's some value. And then it's the secondary purchaser who has some, perhaps, ability to recover against another entity. But at that point in time, all of those individuals have recognized losses for which they have not been compensated at that point in time. Let's say you have a motorhome that's worth $100,000 and it's stolen from you. And you say, if you get it back, it's... No, it's... I'm trying to remember the facts. How is it that it's doubled here? Well, what they ultimately determined was that they looked at the fair market value of the motorhomes. And they looked at... And it came up with competing values. And ultimately, the court adopted the pre-sentence report's amount. I'm just going to assume what the fair market value of it is. So the fair market value is a certain... Go ahead. Okay, so the fair market value is $100,000. But yet, there's a secondary purchaser. So taking into account the nature of this crime and the nature of this defendant who had done this multiple times and knew that when he took this motorhome to the dealer that it was then going to be sold to another individual and that there were going to be potentially losses because if the stolen vehicle is recovered by law enforcement, then that person doesn't have the vehicle anymore. So neither of them have the vehicle. Right. They both paid for it. Yes. And ultimately, it might get all shake out with the insurance companies and the dealer and the secondary purchaser all sort of getting their rights recognized and there being one loss. Your basic view is that the culprit here, the defendant, should take into account that when he behaves in this way, there may be multiple losses down the chain of anybody who buys it, and so he should have to suffer the consequences of whatever number of losses at the time of sentencing have occurred. That's what you're saying. That's correct. And to the extent there are adjustments later, for example, restitution is reduced. So if the secondary purchaser recovers on his claim, then the restitution amount will be reduced. So it's not as though he's being literally held responsible for a sum of money and responsible for that money, but in determining what the magnitude of the loss is, how high the offense level should be, it should take into account the fact that he should have reasonably anticipated causing other entities or persons to suffer losses, so it should be higher. Wouldn't the RV dealer that bought the RV from the defendant have gotten paid by the customer, who's now the second victim here, and so that dealer wouldn't have suffered a loss foreseeably? Yes, but I think that's all taken into account in the loss calculation that was done by the presense report. How so? Yeah, so it's a little confusing to me, too, frankly, but there ultimately wasn't a dispute about the fair market value portion of it. The parties sort of agreed on that part. And so the question here is this other amount, this $800,000. The argument has been presented that that shouldn't matter because there's an ability of those people to recover any funds that they are out, and our response to that is, well, maybe yes and maybe no. Maybe they can get their money back from the dealer that took the money as part of the sale because the title wasn't valid. Under the snapshot, hypothetically, the dealer is not out any money because he's been paid, I mean, subject to profit and all of that, but he's received a substantial amount of his loss from the purchaser. But the problem is the purchaser can come back and say, you didn't give me good title, I want all my money back. But under the snapshot theory, you wouldn't look at that because you're just looking at the snapshot. That's the problem I'm having. It's just one of those problems that Citizens Commission has difficulty trying to define. Well, that's an answer, I guess. And in any event, it is a two-level swing. I will just remind the court on that issue in particular. Two-level what? So there's a two-level swing on that. So we would argue that if there was error in including that, that it was harmless because it wouldn't have affected the guideline range. Of course, it depends on how you decide the other sentencing issues as well. Well, I'm going to ask you about sophistication. We'll let this case. We have rebuttal, right? Sure. Well, since you're interested in the loss, I'm going to have to talk about it just briefly. I just don't think there's any way to defend how the loss is calculated. You've got one motor home.  It goes back to the owner. You've got one dealer making a sale. He got his money from the buyer. Why in the criminal sphere, in the sentencing sphere, are we going to make a special rule in loss calculation compared to? How does the money get back to the original dealer from which the guy stole the motor home when he goes, takes it across state lines and sells it to another dealer in another part of the world? I don't know. How does the original dealer get made whole? Actually, in our case, these motor homes recovered. I mean, it's not like the motor home disappeared. And even if it did disappear, it's only got one value. Why are we going to lump a defendant with multiples of value? I just don't understand the justification for that. He knows he's setting, I mean, a theory would be, I don't know whether it would be a good idea, but the theory would be that he knows that this is the way the system works, and a thing could be sold 20 times. Oh, sure, sure. But, I mean, that's true of any tortfeasor, any wrongdoer in any arena. Any reasonable person knows that causation chains are infinite, and at some point they're cut off. Why wouldn't you just use the value of the pot? How do you respond to the backup argument that it doesn't make any difference here? If we, for instance, rule against you on all your other sentencing claims, do we have to reach this one? Oh, I think so, because it changes the guideline range. A two-level change, I think. If it changes the sentencing guideline range, then I think it's harmful error. And I think there's a fallback argument to that, which is the district court has an obligation in every sentencing case to correctly calculate the guidelines and go from there, and it's very hard to speculate about, well, what would the sentence have been. Nobody knows how to calculate guidelines on this question. Because the sentencing commission hasn't said how you calculate it. I thought the argument was that it might change the amount of loss, but it wouldn't change it enough to change the guideline range. Oh, no. Well, my perspective of it was it did drop it below a – it would create a too offense-level swing. That was my calculation. I mean, I guess I could be wrong. With respect to the government's 20HA letter, would you – I guess the court would invite you to file a response to that letter, since it was late. Oh, very well. I'll be happy to do that. Thank you. Maybe within how long for a suggestion? Two weeks. Two weeks. Could you do that in two weeks? That would be fine. Sure. Thank you. Is that all right with you, Judge Mayer? Yes. Thank you. The case will be submitted. Thank you. And we appreciate your argument, especially under the Criminal Justice Act. We appreciate your service under the Criminal Justice Act. Thank you.